UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNYSLVANIA

| | |
|---|---|
| J.D. and R.D.<br><br>               Plaintiffs<br><br>    v.<br><br>BENJAMIN PRICE; DELTA AIR LINES, INC.;<br>HOST INTERNATIONAL, INC., and HMSHOST<br>CORPORATION<br><br>              Defendants | CIVIL ACTION<br><br>CASE NO.  2:20-cv-749 |

**PLAINTIFF'S OMNIBUS RESPONSIVE CONCISE STATEMENT OF MATERIAL FACTS TO DEFENDANTS' DELTA AIR LINES, INC.; HOST INTERNATIONAL, INC.; AND HMSHOST CORPORATION MOTIONS FOR SUMMARY JUDGMENT**

I.      **PLAINITFFS' RESPONSE TO DEFENDANT DELTA AIR LINES, INC. "UNDISPUTED AND MATERIAL FACTS"[1]**

1.      On May 20, 2018, Plaintiff J.D. ("J.D.") was a passenger on Delta Air Lines Flight 1860 (the "Flight") from Pittsburgh, Pennsylvania to Hartsfield-Jackson Atlanta International Airport in Atlanta, Georgia. (Plaintiffs' Second Amended Complaint at ¶ 17, attached as Exhibit "A").

**RESPONSE: Admitted.**

2.      Defendant Benjamin Price ("Price") was also a passenger on Delta Air Lines Flight 1860 and was seated next to Plaintiff J.D. (Exhibit "A" at ¶ 18).

**RESPONSE: Admitted.**

---

[1] Defendants Delta Air Lines, Inc. first filed a Motion for Summary Judgment on March 17, 2021 and a Supplemental Motion on August 10, 2021. While several of the undisputed material facts were repeated in the Supplemental Motion, Plaintiffs will provide an admission or denial to each even if repeated to avoid possible confusion.

3.    Prior to boarding Flight, Price was drinking alcohol beverages at a TGI Friday's restaurant in the Pittsburgh International Airport. (Exhibit "A" at ¶21).

**RESPONSE: Admitted.**

4.    There is [not] [sic] evidence or testimony that supports the claim that Defendant Price was "heavily and visibly intoxicated" upon boarding the subject flight despite Plaintiffs' allegation of the same. Nor is there any evidence Delta observed any behavior that would put it on notice that Mr. Price presented a danger to the crew or the passengers.

**REPONSE: Admit as phrased as to the first sentence. Denied as presumably intended. Second sentence denied. Plaintiff J.D. has testified under oath that she noticed that as Mr. Price was boarding the aircraft he was "unstable as soon as he got onto the plane" and was staggering and grabbing a hold of other passengers' seats to prevent himself from falling over. (Deposition of J.D. at 57:2-58:24, Exhibit 1). J.D. noted that Mr. Price had a strong odor of alcohol about him; his eyes were red and glassy; and he was having issues trying to get his seatbelt buckled. (Deposition of J.D. at 59:9-18, Exhibit 1) Mr. Price then stared at J.D. with a "drunk googly-eyed look to him" and subsequently passed out.  (Deposition of J.D. at 57:2-58:24, Exhibit 1).**

**Plaintiffs also designated Randall Tackett, PhD, a pharmacologist and toxicologist to determine to a high level of pharmacological and toxicological uncertainty what Mr. Price's blood alcohol concentration level (BAC) and noticeable signs of intoxication would have been at TGI Fridays and prior to boarding Delta Flight 1860 and upon landing. Dr. Tackett, using the Widmark formula and review of materials in this case, opined that Mr. Price's BAC was between .183% to .15%, resulting in disinhibition, deficits in coordination and psychomotor skills, slurred speech, impaired memory and judgement, sleepiness, red**

glassy eyes, and gaps in memory. (Affidavit of Randall Tackett with Report and CV, attached as Exhibit 2).

Additionally, Mr. Price has testified, without dispute, that he walked toward the departure gate with his Styrofoam cup full of Crown Royal in his hand. Mr. Price still had the cup in his hand when he boarded Delta Flight 1860 and did nothing to disguise the smell of alcohol on his breath. (Deposition of Benjamin Price at 34:17-35:23 at Exhibit 3). Mr. Price finished the to-go cup of alcohol. (Deposition of Benjamin Price at 55:18-25 at *id.*).

Finally, Delta's flight crew members do not recall observing Mr. Price one way or another drunk or sober. Their lack of recollection is not evidence. There continues to produce a question of fact of whether Delta should have prevented Mr. Price from boarding. Defendant Delta's own policies, federal law, and its own employees recognize that intoxicated persons may not board a flight because of the safety risk they pose, including assault to other passengers.  (Deposition of Suzan Shaw 9:2-11:19, Exhibit 4). (Deposition of Juavesha Stephens at 10:18-25, Exhibit 5). (Deposition of Renae Asay at 12:23-17:17, Exhibit 6). (Delta Policies, Exhibit 7 to be filed under seal; Delta 000011-00014; 00025-00026). 14 C.F.R. 121.575

5.      Defendant Price testified that he did not vomit, did not trip or fall, threaten anyone or exhibit any hostile behavior towards anyone prior to or during boarding for the subject flight. (Deposition of Benjamin Price at 59:15- 60:4, attached hereto as Exhibit "B"). Nor does he recall being on the phone during the relevant time. (Deposition of Benjamin Price at 59:7-10, attached hereto as Exhibit "B").

**RESPONSE: Admitted only to the extent that Defendant Price testified to the above, and his testimony speaks for itself. Denied that it is material whether Mr. Price was on the phone.**

6.      The lead flight attendant on the subject flight, Dequavius Baker, testified that he did not observe anything out of the ordinary with Defendant Price and knew nothing of the subject incident until plaintiff reported the same to him after the aircraft had landed. (Deposition of Dequavius Baker at 16:7-18:18, attached hereto as Exhibit "C").

**RESPONSE: Admitted.**

7.      On the date of the Incident, J.D. was "traveling on official government duty as an armed law enforcement officer." (Exhibit "A" at ¶ 17).

**RESPONSE: Admitted.**

8.      Despite being an on-duty law enforcement officer, Plaintiff J.D., did not notify any Delta employee or representative that she believed defendant Price to be a potential danger, nor did she report that she concluded he was intoxicated when he boarded and took his seat.

**RESPONSE: Denied in part as a material fact due to relevance as framed. While it is admitted that Plaintiff J.D. did not raise her concerns with members of the Delta team as to Mr. Price's intoxication, J.D. as a law enforcement officer is trained to not interfere with passenger matters unless asked by the crew. Her duty is only to protect threats to the cockpit. (Deposition of J.D. at 146:24-149:21, Exhibit 1). (See also Deposition of R.D. at 99:6-100:21, Exhibit 14)**

9.      Defendant Price was not served any alcoholic beverages during the subject flight. (See the Answers to Interrogatories of plaintiff, attached hereto as Exhibit "D", at No. 5).

**RESPONSE: Admitted.**

10.    Defendant Price "passed out" after getting situated on the flight according to plaintiff J.D., there is no evidence or testimony that any Delta employee had any interaction with defendant Price after the time of boarding until after the aircraft had landed. (Exhibit "A" at 28).

**RESPONSE: Admitted.**

11.    When asked in discovery to identify "all facts, evidence, and witnesses" to support her allegation that defendant Price was "visibly, noticeably, and obviously intoxicated" when he boarded the subject flight, plaintiffs responded solely with her own observations of Defendant Price. (Exhibit "D" at No. 4).

**RESPONSE: Admitted in part, denied in part. See *infra* Plaintiffs Response to Defendant Delta Air Lines, Inc. "Undisputed Material Fact No. 4. Plaintiff J.D.'s observations in fact create a genuine issue of material fact for which summary judgment is improper.**

12.    Defendant Benjamin Price pled guilty to assaulting plaintiff J.D. on board Flight 1860 on May 20, 2018 (Exhibit "A" at ¶ 4).

**RESPONSE: Admitted.**

13.    Prior to filing their motion, undersigned counsel contacted plaintiffs' counsel of records, who advised that she does not agree to the relief sought herein.

**RESPONSE: Admitted.**

## II.    PLAINTIFFS' RESPONSE TO DEFENDANT DELTA AIR LINES, INC.
## SUPPLEMENTAL "UNDISPUTED AND MATERIAL FACTS"

1.      On May 20, 2018, Plaintiff J.D. ("J.D.") was a passenger on Delta Air Lines Flight 1860 (the "Flight") from Pittsburgh, Pennsylvania to Hartsfield-Jackson Atlanta International Airport in Atlanta, Georgia. (Plaintiffs' Second Amended Complaint at ¶ 17, attached as Exhibit "A").

**RESPONSE: Admitted.**

2.      Defendant Benjamin Price ("Price") was also a passenger on Delta Air Lines Flight 1860 and was seated next to Plaintiff J.D. (Exhibit "A" at ¶ 18).

**RESPONSE: Admitted.**

**3.**      Plaintiffs alleges that Price sexually assaulted J.D. as the aircraft prepared to land in Atlanta (the "Incident)). (Exhibit "A") at ¶ 30).

**RESPONSE: Admitted.**

4.      Prior to boarding Flight, Price was drinking alcohol beverages at a TGI Friday's restaurant in the Pittsburgh International Airport. (Exhibit "A" at ¶21).

**RESPONSE: Admitted.**

5.      J.D. did not observe Mr. Price in the gate area.

**RESPONSE: Admitted.**

6.      Delta's gate agent for the Flight, Renae Asay, testified that she would not allow a passenger to board a flight if they appeared intoxicated or exhibited any other disruptive or harmful behavior. (Deposition of Renae Asay at 12:23-14:12, attached hereto as Exhibit "B").

**RESPONSE: Admitted only that Renae Asay testified to the above. Plaintiffs deny that Ms. Asay's speculative testimony as to what she *would* have done is a material fact.**

**The speculative testimony is neither material nor relevant what Ms. Asay *would* have done had she noticed Mr. Price. This is speculative, not relevant, unfairly prejudicial, and inadmissible under Federal Rule of Evidence 401, 402, and 403.**

7.      Ms. Asay did not recall any observation of Price as he boarded the Flight. (Deposition of Renae Asay at 26:14-18, attached hereto as Exhibit "B").

        **RESPONSE:** Admitted.

8.      Ms. Asay testified that she would have recalled any observation of Price if he appeared intoxicated or exhibited any other alarming behavior. ((Deposition of Renae Asay at 26:14-18, attached hereto as Exhibit "B").

        **RESPONSE: Admitted only that Renae Asay testified to the above. Plaintiffs deny that Ms. Asay's speculative testimony as to what she *would* have recalled is a material fact. The speculative testimony is neither material nor relevant what Ms. Asay *would* have recalled about Mr. Price. This is speculative, not relevant, unfairly prejudicial, and inadmissible under Federal Rule of Evidence 401, 402, and 403.**

**9.**      Ms. Asay testified that she would have documented any such observation and alerted the captain and lead flight attendant.

        **RESPONSE: Admitted only that Renae Asay testified to the above. Plaintiffs deny that Ms. Asay's speculative testimony as to what she *would have* done is a material fact. The speculative testimony is neither material nor relevant what Ms. Asay *would have* done in response to noticing Mr. Price. This is speculative, not relevant, unfairly prejudicial, and inadmissible under Federal Rule of Evidence 401, 402, and 403.**

10.    Price did not vomit, trip, or fall, threaten anyone, or exhibit any hostile behavior prior or during his boarding of the Flight. (Deposition of Benjamin Price at 59:15-60:4, attached hereto as Exhibit "D").

**RESPONSE: Admitted that Price testified that he did not vomit, trip, fall, threaten anyone, or exhibit any hostile behavior prior or during his boarding of the Flight. Denied that Price's behavior was not threatening, as Plaintiff J.D. testified to the following: "Q: And would it also be fair that he did not exhibit any threatening behavior prior to the incident? A: I would like to challenge that just because if a person is that intoxicated, I don't know what he is capable of doing or wanting to do." (Deposition of J.D. at 145:24-146:24, Exhibit 1.) ( "A person that intoxicated could very well in fact be a safety issue.")**

11.    Delta's lead flight attendant, Dequavius Baker, did not observe anything out of the ordinary with Price before the Flight landed. (Deposition of Benjamin Price at 59:15-60:4, attached hereto as Exhibit "C.")

**RESPONSE: Admitted that Mr. Baker testified to the same and his testimony speaks for itself.**

12.    On the date of the Incident, J.D. was "traveling on official government duty as an armed law enforcement officer." (Exhibit "A" at ¶ 17).

**RESPONSE: Admitted.**

13.    While J.D. testified that Price appeared intoxicated when he took his seat beside her, she did not identify any behavior by Price that would indicate a disposition to engage in violent or harmful behavior before the Incident. (Deposition of J.D. at 56:7-62:2, attached hereto as Exhibit "E")

**RESPONSE: Denied. J.D. testified numerous times that Price was a threat. For example, when deposed, J.D. was asked "So it's your testimony here today that you personally concluded that Mr. Price was in fact a safety risk to the passengers on board, yourself, and the pilots, yet you did not alert any of the crew?" A: "That would be correct…my concentration is on the cockpit, and I'm not supposed to intervene on the flight unless I am actually asked by the crew." (Deposition of J.D. at 146:17-147:24, Exhibit 1).**

14.    Nor did J.D. report any behavior by Price to the Flight crew during the boarding process or during the flight.

**REPSONSE: Admitted. Denied as to relevance as a material fact, as J.D. testified numerous times that as a law enforcement officer aboard an aircraft she is not to intervene on a flight unless asked by the crew. (Deposition of J.D. at 146:17-147:24, Exhibit 1).**

15.    Price fell asleep before the aircraft left Pittsburgh and did not wake up until ten (10) minutes before the flight crew notified passengers that they were beginning their descent into Atlanta. (Deposition of J.D. at 61:5-20, attached hereto as Exhibit "E").

**RESPONSE: Admitted.**

16.    J.D. did not notify any Delta employee or representative that Price was intoxicated or that he may present a danger to other passengers before the Incident. (Deposition of J.D. at 59:25-60:10, attached hereto as Exhibit "E").

**RESPONSE: Admitted. Denied as to relevance as a material fact, as J.D. testified numerous times that as a law enforcement officer aboard an aircraft she is not to intervene on a flight unless asked by the crew. (Deposition of J.D. at 146:17-147:24, Exhibit 1).**

17.    Price was not served any alcoholic beverages during the Flight. (Deposition of J.D. at 136:17-19, attached hereto as Exhibit "E").

**RESPONSE: Admitted.**

18.    When asked in discovery to identify "all facts, evidence and witnesses" to support her allegation that Price was "visibly, noticeably, and obviously intoxicated" when he boarded the Flight, J.D. referred Delta to statements and deposition testimony of witnesses who did not observe Price until after the Flight landed in Atlanta (See J.D.'s Supplemental Answers to Delta's Interrogatories, attached hereto as Exhibit "F", at No. 4).

**REPSONSE: Denied. See *infra* Plaintiffs Response to Defendant Delta Air Lines, Inc. "Undisputed Material Fact No. 4. Plaintiff J.D.'s observations in fact create a genuine issue of material fact for which summary judgment is improper.**

19.    Other than J.D.'s own account, these observations and interactions occurred hours after Price boarded the aircraft and after the witnesses had already been informed by J.D. that Price was intoxicated. (See J.D.'s Supplemental Answers to Delta's Interrogatories, attached hereto as Exhibit "F", at No. 4).

**REPSONSE: Denied. See *infra* Plaintiffs' Response to Defendant Delta Air Lines, Inc. "Undisputed Material Fact No. 4. Plaintiff J.D.'s observations in fact create a genuine issue of material fact for which summary judgment is improper. J.D.'s observations of Mr. Price's intoxication were contemporaneous with him boarding the aircraft. Further, several witnesses had personal knowledge that Mr. Price was intoxicated, including Detective Nicholas Deaton, a Clayton County Georgia Police Officer and FBI Task Force Officer at the time, observed, interacted with, and arrested Mr. Price after observing his obvious intoxication. Det. Deaton observed that Mr. Price's eyes were red and glassy; he**

**had a strong odor of alcoholic beverages about his person; he was unsteady on his feet and stumbled as he walked; his speech was slurred. (Affidavit of Det. Deaton, Exhibit 18). Other witnesses with personal knowledge of Mr. Price's intoxication include Spencer Hutchinson, a Delta Red Jacket, who testified that Mr. Price exhibited numerous signs of intoxication upon landing at the Atlanta airport, including staggering up the jetway, smelling strongly of alcohol, slurring speech, and spending thirty minutes in the restroom. (Exhibit 8, Deposition of Hutchinson at 12:16-13:6; 16:7-20). Jan Burton, a Delta gate agent in Atlanta, testified that upon landing in Atlanta, Mr. Price was red and slurring, and by his appearance would not be allowed to board her aircraft if he came to her gate. (Exhibit 9, Deposition of Jan Burton at 12:21-13:18).**

20.     J.D. also referred Delta to the deposition testimony of Price, who denied engaging in any behavior that would place Delta on notice that he was visible intoxicated or may present a danger to other passengers before the Incident. (See J.D.'s Supplemental Answers to Delta's Interrogatories, attached hereto as Exhibit "F", at No. 4).

**REPSONSE: Denied. Defendants conflate Mr. Price's lack of recollection with a lack of occurrence. Benjamin Price admitted to being "drunk" and probably "the drunkest, the most intoxicated" he had ever been in his life at the Pittsburgh International Airport TGI Fridays on May 20, 2018. (Deposition of Benjamin Price at 32:9-13, Exhibit 3). Mr. Price does not remember whether he was experiencing any difficulty walking to and from the bathroom while at TGI Fridays; does not remember if he had any trouble walking to the gate to reach his plane; and does not remember if he had any difficulty walking to his seat on the plane. (Deposition of Benjamin Price at 52:6-23 at Exhibit 3).**

**Mr. Price pled guilty to assault. During his sentencing hearing, he attributed the assault to his intoxication. (Transcript of Benjamin Price Assault Hearing in U.S. District Court for the Northern District of Georgia at 22, Exhibit 10).**

21.    Finally, J.D. referred to a report prepared by her expert witness, who never observed or interacted with Price on the date of the Incident. (See J.D.'s Supplemental Answers to Delta's Interrogatories, attached hereto as Exhibit "F", at No. 4).

**REPSONSE: Admitted that J.D. referred to a report prepared by Dr. Randall Tackett, a pharmacological and toxicological expert who opined on Mr. Price's BAC and noticeable symptoms of intoxication on May 20, 2018. There is no requirement that "an expert have direct personal knowledge of the facts forming the basis of his opinion." *Arrowood Indem. Co. v. Hartford Fire Ins. Co.,* 774 F. Supp. 2d 636, 648 (D. Del. 2011)**

22.    In sum, Plaintiffs have produced no evidence or testimony that supports their claim that Price was "visibly and odorously intoxicated" upon boarding the Flight.

**RESPONSE: Denied. See *infra* Plaintiffs' Response to Defendant Delta Air Lines, Inc. "Undisputed Material Fact No. 4."**

23.    More importantly, Plaintiffs have produced no evidence or testimony to establish that Delta knew or should have known that Price presented a danger to J.D. or any other passenger on the Flight.

**RESPONSE: Denied. See e.g. *infra* Plaintiffs' Supplemental Response to Defendant Delta Air Lines Inc. "Undisputed Material Facts No. 10 and No. 13." Further as previously stated, Defendant Delta's own policies, federal law, and its own employees recognize that intoxicated persons may not board a flight because of the safety risk they pose, including assault to other passengers. (Deposition of Suzan Shaw 9:2-11:19, Exhibit 4). (Deposition of**

**Juavesha Stephens at 10:18-25, Exhibit 5). (Deposition of Renae Asay at 12:23-17:17,**

**Exhibit 6). (Delta Policies, Exhibit 7 to be filed under seal; Delta 000011-00014; 00025-**

**00026). 14 C.F.R. 121.575**

    24.    Accordingly, Plaintiffs cannot establish a genuine issue of material fact regarding

Delta's alleged breach of any duty owed to J.D.

    **RESPONSE: Denied. Defendants' statement is not a fact—it is an argument. In the**

**interest of judicial economy, Plaintiffs incorporate all previous denials to this response as**

**well as their memorandum in opposition.**

III.    **PLAINTIFFS' RESPONSE TO DEFENDANTS HMSHOST CORPORATION/HOST INTERNATIONAL, INC. "UNDISPUTED FACTS"**

1.    On May 20, 2018, Plaintiff J.D. arrived at the Pittsburgh International Airport to board Delta Air Lines Flight 1860 from Pittsburgh, Pennsylvania to Hartsfield-Jackson Atlanta International Airport in Atlanta, Georgia. See Plaintiffs' Second Amended Complaint at ¶ 17 attached hereto as Exhibit "A").

**RESPONSE: Admitted.**

2.    Plaintiff, J.D. pre-boarded the flight and proceeded to her seat at 13B, a middle seat aboard the aircraft. (Exhibit "A" at ¶ 18). A passenger, named Vincent Pilolli, then sat next to J.D. in the aisle seat in 13C. (Exhibit "A" at ¶ 18).

**RESPONSE: Admitted.**

3.    Mr. Vincent Pilolli, has not been deposed as a witness in this matter, nor has he provided any written statement or affidavit regarding the facts of this case.

**RESPONSE: Admitted that Mr. Pilolli has not been deposed as a witness in this matter nor provided an affidavit in this case. Denied that such fact is material and any innuendo from a lack of a statement from Mr. Pilolli. If Defendants wished to rely on Mr. Pilolli's testimony, they were free to provide a statement or affidavit from Mr. Pilolli in support of their motion for summary judgment.**

**Plaintiffs deny that Mr. Pilolli has not provided a statement. Mr. Pilolli provided a statement to Detective Nicholas Deaton who responded to the incident in Atlanta and noted that Mr. Pilolli "stated he observed the indecent action of PRICE grabbing ▮▮▮▮▮▮ inappropriately." (Declaration of Nicholas Deaton at 18 at Exhibit A)**

4.    Prior to boarding Delta Flight 1860, Defendant, Benjamin Price was drinking alcoholic beverages at the TGI Friday's restaurant in the Pittsburgh International Airport, a restaurant owned, operated, and maintained by Defendants HMSHost and/or Host International. (Exhibit "A" at ¶ 21).

**RESPONSE: Admitted.**

5.    Defendant, Price, was served 5 alcoholic beverages and an order a chicken wings, at the TGI Friday's by former employee, Stephanie Johnson. See Defendant, Price's Receipt Attached hereto as Exhibit "B". Defendant, Price paid his $62.95 bill by personal credit card and left a $5.00 tip. Id.

**RESPONSE: Admitted that Mr. Price's receipt speaks for itself.  Mr. Price was documented to have been served in sum 40 ounces of beer (two 20-ounce Stella Artois) and six shots of whiskey (three 2 ounce Crown Royal on the rocks) while seated at the TGI Fridays. (TGI Fridays Receipt, Exhibit 12) (Deposition of HMSHost Corporation/ Host International, Inc. Joseph Krzyzanowski, 30(b)(6) witness for HMSHost Corporation/Host International, Inc. at 32:6-36:24, Exhibit 11).**

6.    Ms. Stephanie Johnson has not been deposed as a witness in this case, nor has she provided any written statement or affidavit regarding the facts of this case.

**RESPONSE: Denied that the above is a material fact.  It is admitted that Ms. Johnson has not been deposed as a witness in this case. Ms. Johnson was provided as a potential witness by HMSHost Corporation/Host International, Inc.  and former employee of Defendant HMSHost Corporation/Host International, Inc.  and is within the subpoena power of this Court. (Exhibit 20) Notwithstanding, per her affidavit, Ms. Johnson refutes ever working at Concourse D.**

7.      The Delta gate agent for this flight at the Pittsburgh International Airport was Renae Asay, and she has testified that she did not recall any observation of Defendant, Price as he boarded the Flight. See Deposition Transcript of Renae Asay at 26:14-18 attached hereto as Exhibit "C".

**RESPONSE: Admitted that Renae Asay was the Pittsburgh gate agent for Delta Flight 1860. Denied as to the characterization of her testimony, as it speaks for itself. "Q: Did you observe Mr. Price when he boarded the aircraft? A: Sir, it was over two years ago. I honestly couldn't recall." Defendants' Exhibit C at 26:10-12.**

8.      Ms. Asay further testified that if there was something alarming she would have remembered it and documented it on his passenger record and notified the captain and the lead flight attendant. Id.

**RESPONSE: Admitted only that Renae Asay testified to the above. Plaintiffs deny that Ms. Asay's speculative testimony as to what she _would_ have recalled is a material fact. The speculative testimony is neither material nor relevant what Ms. Asay _would_ have recalled about Mr. Price. This is speculative, not relevant, unfairly prejudicial, and inadmissible under Federal Rule of Evidence 401, 402, and 403.**

9.      The lead flight attendant for Delta for this flight was Mr. Dequavius Baker. Mr. Baker does not recall any observations of Defendant, Price when he boarded the plane in Pittsburgh, Pennsylvania. See Deposition Transcript of Dequavius Baker at 13:16-14:14 attached hereto as Exhibit "D".

**RESPONSE: Admitted.**

10.      Delta flight attendant Ms. Juavesha Stephens was working aboard this flight and does not remember the flight and did not make any observations of Mr. Price when he boarded

the plane or any observations of him during the flight. See Deposition Transcript of Juavesha

Stephens at 15:6-8 and 16:5-8 attached hereto as Exhibit "E"

**RESPONSE: Denied as to the characterization of Ms. Stephen's testimony, which**

**speaks for itself. Ms. Stephens testified that she remembered "nothing really" about Delta**

**Flight 1860 on May 20, 2018.  See Defendants' Exhibit E at 15:6-8.**

11. A third Delta flight attendant, Suzan Shaw was aboard this flight and she also did

not make any observations of Defendant, Price, did not witness anything out of the ordinary and

did not recall seeing anyone who appeared to be intoxicated on that flight. See Deposition of

Transcript of Suzan Shaw at 16:3-22 attached here to as Exhibit "F".

**RESPONSE: Denied as to the characterization of Ms. Shaw's testimony, which**

**speaks for itself.  Ms. Shaw specifically testified that she did not "specifically" recall Delta**

**Flight 1860 on May 20, 2018. See Defendants Exhibit F at 16:3-22.**

12. Defendant, Benjamin Price boarded the aircraft and went to his seat at 13A.

(Exhibit "A" at ¶ 19).

**RESPONSE: Admitted.**

13. Defendant, Benjamin Price testified he did not see any signs or symptoms of

drunkenness when he left the TGI Friday's, he did not remember any difficulty walking to and

from the bathroom while at TGI Friday's, nor any difficulty walking to the plane or his seat. See

Deposition Transcript of Benjamin Price attached hereto as Exhibit "G" at 38: 16-19 and 52:11-1

**RESPONSE: Denied as to the characterization of Mr. Price's recollection—not**

**remembering is not the same as not occurring, and Mr. Price's testimony speaks for itself.**

**Mr. Price qualified each recollection with "I don't know." For example, Mr. Price states**

**that during his time at the bar at TGI Fridays, he "I drank a lot of alcohol. I don't know if**

**I was completely intoxicated, no…." "I didn't really see any signs, I don't know." He**

**simply does not recall or remember. (Deposition Transcript of Benjamin Price attached**

**hereto as Defendant HMS Host Exhibit "G" at 38: 13-19 and 52:11-19.)**

14.    Mr. Price further testified that from the time he left the restaurant to the time he

got to his seat, he did not vomit and did not trip and fall. (Exhibit "G" at 59:15-21).

**RESPONSE: Admitted only that Mr. Price testified that he did not vomit, or trip, or**

**fall at that specific time.**

15.    Plaintiff J.D. and passenger, Vincent Pilolli got up and stood in the aisle to allow

Defendant, Price to sit in his seat. It was at this point, plaintiff, J.D. noticed a strong smell

of alcohol emanating from Defendant, Price's person. Mr. Price had difficulty locating his

seatbelt and then "passed out". (Exhibit "A" at ¶ ¶ 25 and 26).

**RESPONSE: Admitted.**

16.    Plaintiff, J.D. was travelling that day on official government duty in her capacity

as an armed federal law enforcement officer. (Exhibit "A" at 17.)

**RESPONSE: Admitted.**

17.    At no time, during the boarding process or during the flight did plaintiff raise any

concerns to the Delta crew about Defendant, Price. See Deposition Transcript of Plaintiff,

J.D. at 60:8-10 attached hereto as Exhibit "H".

**RESPONSE: Denied in part as a material fact due to relevance as framed. While it**

**is admitted that Plaintiff J.D. did not raise her concerns with members of the Delta team as**

**to Mr. Price's intoxication, J.D. as a law enforcement officer is trained to not interfere with**

**passenger matters unless asked by the crew as her concentration is on the cockpit.**

**(Deposition of J.D. at 146:24-149:21, Exhibit 1).**

18.     This Delta flight was scheduled to leave at 3:26 pm, but instead, the plane left the gate at Pittsburgh International Airport at 3:39 pm and landed in Atlanta, GA at 5:22 pm. See Delta Flight Times bates stamped DELTA 000039, attached hereto as Exhibit "I".

**RESPONSE: Admitted that the statement contains an accurate recitation of the information contained in bates stamped document Delta 000039.**

19.      Approximately 10 minutes before this flight touched down in Atlanta, GA, is when Plaintiff, J.D., alleges she was assaulted by Defendant, Price. (Exhibit "A" at ¶¶ 29 and 31).

**RESPONSE: Denied. J.D. was sexually assaulted by Defendant Price ten minutes prior to the descent pattern. (Deposition of J.D. at 61:16-20, Exhibit 1).**

20.     Defendant, Price never had his blood alcohol content tested by breath or blood sample.

**RESPONSE: Admitted.**

21.     Plaintiffs cannot produce any evidence that Defendant, Price was visibly intoxicated prior to being served his last drink at the TGI Friday's.

**RESPONSE: Denied.**

22.     Accordingly, Plaintiffs cannot identify a genuine issue of material fact regarding Host International, Inc. and/or HMSHost Corporations' alleged violations of 47 P.S. Section 4-493 and therefore said Defendants have no liability under 47 P.S. Section 4-497.

**RESPONSE: Denied. See *infra* Plaintiffs Response to Defendant Delta Air Lines, Inc. "Undisputed Material Fact No. 4. Plaintiff J.D.'s observations in fact create a genuine issue of material fact for which summary judgment is improper.**

## IV.    PLAINTIFFS UNDISPUTED MATERIAL FACTS IN OPPOSITION

**A.    Mr. Price became heavily intoxicated while at TGI Fridays and that Mr. Price cannot recall, one way or another, the precise symptoms of intoxication he was experiencing while at TGI Fridays.**

1.        Prior to boarding Delta Flight 1860 on May 20, 2018, Defendant Benjamin Price was drinking alcoholic beverages at the Concourse D TGI Fridays owned/operated by Defendants HMSHost Corporation/Host International, Inc. beginning at 1:11 p.m. (TGI Fridays Reciept, Exhibit 12) (Deposition of Joseph Krzyzanowski, 30(b)(6) witness for HMSHost Corporation/Host International, Inc. at 8:25-9:8, 12:7-13:1; 32:6-36:24, Exhibit 11).

2.        Mr. Price was documented to have been served in sum 40 ounces of beer (two 20-ounce Stella Artois) and six shots of whiskey (three 2 ounce Crown Royal on the rocks) while seated at the TGI Fridays. (Exhibit 12. Exhibit 11, Deposition of Joseph Krzyzanowski, 30(b)(6) witness for HMSHost Corporation/Host International, Inc. at 32:6-36:24).

3.        Benjamin Price admitted to being "drunk" and probably "the drunkest, the most intoxicated" he had ever been in his life at the Pittsburgh International Airport TGI Fridays on May 20, 2018. (Deposition of Benjamin Price at 32:9-13, Exhibit 3).

4.        Mr. Price does not remember whether he was experiencing any difficulty walking to and from the bathroom while at TGI Fridays; does not remember if he had any trouble walking to the gate to reach his plane; and does not remember if he had any difficulty walking to his seat on the plane. (Deposition of Benjamin Price at 52:6-23 at Exhibit 3).

5.        Mr. Price has admitted that he was intoxicated while drinking at TGI Fridays, and that he was intoxicated at the time that he boarded Delta Flight 1860. (Price's Answer to Second Amended Complaint, ECF Doc. 23 at ¶22-24).

**B.     Mr. Price was given a to-go Styrofoam cup of Crown Royal by the TGI Fridays bartender who had served him forty ounces of beer and six shots of whiskey, and he took the cup with him as he walked mere steps to Gate D78 to board Delta Flight 1860.**

6.      When Benjamin Price left TGI Fridays, he was given a Styrofoam cup by the TGI Fridays bartender who had waited on him on May 20, 2018. The Styrofoam cup was filled to the top with Crown Royal whiskey. It was an additional drink to the Stella beers and Crown Royal whiskeys he had previously consumed at TGI Fridays. (Deposition of Benjamin Price at 32:9-33:18 at Exhibit 3).

7.      Benjamin Price was never told to slow his drinking and was not cut off at TGI Fridays. (Deposition of Benjamin Price at 33:21-33:10 at Exhibit 3).

8.      Benjamin Price was almost late to board his flight.  (Deposition of Benjamin Price at 34:11-16 at Exhibit 3).

9.      Mr. Price was the last person to board the aircraft. (Deposition of J.D. at 56:7-57:22, Exhibit 1).

10.     Delta Flight 1860 was scheduled to depart at 3:26. p.m., but instead departed at 3:39 p.m. from Pittsburgh International Airport. The flight departed from Gate D78. The flight landed at 5:22 p.m. at Hartsfield-Jackson Atlanta International Airport. The flight reached the gate at 5:37 p.m. (Exhibit. 17, Delta 000039).

11.     Benjamin Price walked toward the departure gate with his Styrofoam cup full of Crown Royal in his hand. Mr. Price still had the cup in his hand when he boarded Delta Flight 1860 and did nothing to disguise the smell of alcohol on his breath. (Deposition of Benjamin Price at 34:17-35:23 at Exhibit 3). Mr. Price finished the to-go cup of alcohol. (Deposition of Benjamin Price at 55:18-25 at *id.*).

12.     Delta Flight 1860's departure gate D78 was next to the Concourse D TGI Fridays. (Plaintiffs' Supplemental Production Photos J.D. 0000394-000398, attached hereto as Exhibit 13).

13.     Defendants Delta Air Lines, Inc. and HMSHost Corporation/Host International, Inc. cannot produce and have not produced any evidence or witness to refute Mr. Price's statement that he was given a Styrofoam cup full of liquor upon leaving TGI Fridays.

**C.     Delta Air Lines, Inc. is mandated by federal law and company policy to prohibit intoxicated persons from boarding its aircraft because of the foreseeable dangers caused by intoxicated passengers such as assault of other passengers.**

14.     14 C.F.R. 121.575 provides that an air carrier such as Delta Air Lines, Inc. cannot allow any person to board any of its aircraft if that person *appears* to be intoxicated.

15.     Delta Air Lines Inc. is aware of this federal aviation regulation, and further has policies that it trains its employees on to follow to spot and prevent an intoxicated person from boarding an airplane. (Deposition of Suzan Shaw 9:2-11:19, Exhibit 4). (Deposition of Juavesha Stephens at 10:18-25, Exhibit 5). (Deposition of Renae Asay at 12:23-17:17, Exhibit 6). (Delta Policies, Exhibit 7 to be filed under seal; Delta 000011-00014; 00025-00026). 14 C.F.R. 121.575

16.     Delta Air Lines, Inc. is aware of and trains its employees that intoxicated persons on a Delta flight can pose foreseeable safety issues for other passengers including assault, as they can become belligerent, loud, and threaten other passengers. (Deposition of Suzan Shaw 9:2-11:19, Exhibit 4). (Deposition of Renae Asay at 20:17-23:17).

**D.     J.D's direct testimonial evidence regarding Mr. Price's visible, odorous, and obvious intoxication as he was boarding Delta Flight 1860 is undisputed, and unrefuted by any witness in this matter.**

17.     J.D. pre-boarded Delta Flight 1860 and sat in seat 13B, a middle seat. A man who she would later learn named Vincent Pilloli sat in the aisle seat next to her, 13C. J.D. witnessed the other passengers boarding the flight. After some time, no one else was coming on board, so she decided to move to the empty window seat next to her when Mr. Price boarded the plane. (Deposition of J.D. at 56:7-22, Exhibit 1).

18.     J.D. immediately noticed that as Mr. Price was boarding the aircraft he was "unstable as soon as he got onto the plane" and was staggering and grabbing a hold of other passengers' seats to prevent himself from falling over. (Deposition of J.D. at 57:2-58:24, Exhibit 1).

19.     J.D. noted that Mr. Price had a strong odor of alcohol about him; his eyes were red and glassy; and he was having issues trying to get his seatbelt buckled. (Deposition of J.D. at 59:9-18, Exhibit 1).

20.     Mr. Price then stared at J.D. with a "drunk googly-eyed look to him" and subsequently passed out. (Deposition of J.D. at 57:2-58:24, Exhibit 1).

21.     J.D. had concerns about Mr. Price's level of intoxication because a person at his level of intoxication could act unpredictably. (Exhibit 1, Deposition of J.D. at 60:4-22).

22.     Defendants Delta Air Lines, Inc. and HMSHost Corporation/Host International, Inc. cannot produce and have not produced any witnesses to refute J.D.'s testimony regarding Mr. Price's visible, obvious, and odorous intoxication upon boarding Delta Flight 1860.

23.     J.D.'s function as a law enforcement officer aboard an aircraft is to protect the cockpit, and she is instructed and trained to not interfere with passengers unless the crew requests it. (Exhibit 1, Deposition of J.D. at 62:3-64:7). (See also Deposition of R.D. at 99:6-100:21, Exhibit 14)

**E.    J.D was sexually assaulted by Price.**

24.    Ten minutes prior to the initial descent pattern, J.D. realized that Mr. Price was awake when his hand cupped her vagina. He then placed his hand on the inside of her thigh, and rubbed down her thigh. (Exhibit 1, Deposition of J.D. at 62:3-64:7).

25.    J.D. took hold of Mr. Price's wrist for the entirety of the flight so he could not assault her again. (Exhibit 1, Deposition of J.D. at 65:4-17). She made the decision to hold Mr. Price until all other passengers were off the plane after landing to incur the least amount of safety issues and disruption. (Exhibit 1, Deposition of J.D. at 68:1-24). Mr. Price passed out once again.

**F.    Mr. Price's severe intoxication upon landing at Hartsfield-Jackson Atlanta International Airport was obvious and odorous to numerous witnesses.**

26.    Upon landing, Mr. Price continued to exhibit signs of severe intoxication including; difficulty opening his bag and utilizing the zipper; "searching" for his cell phone that was in his hand; continuing to exhibit "googly eyes"; difficulty unbuckling his seat belt; slurred speech; and repeatedly stating that he had to "go piss." (Deposition of J.D. at 71:6-75:15; 79:11-80:13).

27.    J.D. requested assistance in arresting Mr. Price from Delta employees and the Atlanta Police Department.

28.    Eventually, Detective Nicholas Deaton, a Clayton County Georgia Police Officer and FBI Task Force Officer at the time, observed, interacted with, and arrested Mr. Price after observing his obvious intoxication. Det. Deaton observed that Mr. Price's eyes were red and glassy; he had a strong odor of alcoholic beverages about his person; he was unsteady on his feet and stumbled as he walked; his speech was slurred. (Affidavit of Det. Deaton, Exhibit 18).

29.    Spencer Hutchinson, a Delta Red Jacket, testified that Mr. Price exhibited numerous signs of intoxication upon landing at the Atlanta airport, including staggering up the jetway, smelling strongly of alcohol, slurring speech, and spending thirty minutes in the restroom. (Exhibit 8, Deposition of Hutchinson at 12:16-13:6; 16:7-20).

30.    Benjamin Price vomited in the bathroom at the Atlanta airport. (Deposition of Benjamin Price at 39:5-9, Exhibit 3).

31.    Jan Burton, a Delta gate agent in Atlanta, testified that upon landing in Atlanta, Mr. Price was red and slurring, and by his appearance would not be allowed to board her aircraft if he came to her gate. (Exhibit 9, Deposition of Jan Burton at 12:21-13:18).

32.    Mr. Price does not remember sexually assaulting J.D. (Deposition of Benjamin Price at 40:1-25 at Exhibit 3).

33.    Mr. Price was placed under arrest for Public Drunkenness by Detective Nicholas Deaton. (Affidavit of Det. Deaton, Exhibit 18).

34.    Mr. Price pled nolo contendere to public drunkenness. (Clayton County Public Drunkenness Plea, Exhibit 15)

35.    Mr. Price was federally charged with simple assault and pled guilty to simple assault. (Exhibit 16, Judgment of Simple Assault). At his sentencing hearing, Mr. Price attributed his assault to his heavy, voluntary intoxication on May 20, 2018. (Exhibit 10, Transcript of Benjamin Price Assault Hearing in U.S. District Court for the Northern District of Georgia).

V.    **PLAINTIFFS' ADDITIONAL FACTS NECESSARY TO DETERMINE THE MOTION FOR SUMMARY JUDGMENT**

36.    Plaintiffs designated Randall Tackett, PhD, a pharmacologist and toxicologist to determine to a high level of pharmacological and toxicological uncertainty what Mr. Price's

blood alcohol concentration level (BAC) and noticeable signs of intoxication would have been at TGI Fridays and prior to boarding Delta Flight 1860 and upon landing. (Affidavit of Randall Tackett with Report and CV, attached as Exhibit 2).

37.     Dr. Tackett opined using the Widmark formula and review of materials in this case that Mr. Price's BAC was between .183% to .15%, resulting in symptoms of disinhibition, deficits in coordination and psychomotor skills, slurred speech, impaired memory and judgement, sleepiness, red glassy eyes, and gaps in memory. (Affidavit of Randall Tackett with Report and CV, attached as Exhibit 2).

38.     Defendants did not depose Dr. Tackett, nor have they filed any *Daubert* motions to challenge his credentials or opinions.

39.     Defendant HMSHost Corporation/Host International, Inc. designated a toxicological expert who places Mr. Price's BAC between a .131% to .168% upon leaving TGI Fridays and boarding the aircraft. ECF Doc. No. 62-1.

40.     47 P.S. Section 4-493 prohibited HMSHost Corporation/Host International, Inc. from selling, furnishing, or giving liquor, malt, or brewed beverages to a visibly intoxicated person.

41.     Plaintiffs also designated David Rutecki to opine on dram shop/hospitality industry standard of care and any breach thereof related to the service of alcohol and/or operation of the premises at TGI Fridays on May 20, 2018. Defendants did not depose Mr. Rutecki, nor have they filed any *Daubert* motions to challenge his credentials or opinions.

42.     Mr. Rutecki, based on his knowledge, training, experience, and review of materials in this case, has opined that Defendants HMSHost/Host International, Inc. violated the industry standard of care responsible for the service of alcohol by overserving Mr. Price

intoxicating alcoholic beverages in a manner resulting in a BAC of .12-.15 and failing to note

obvious signs of intoxication.  (Affidavit of David Rutecki with Report and CV, attached as

Exhibit 19).

      43.    Defendants HMSHost Corporation/Host International, Inc. did not designate a

hospitality/dram shop liability expert.


Respectfully submitted this the 16th day of September, 2021.

        PANGIA LAW GROUP


        */s/ Amanda C. Dure*
        Amanda C. Dure
        *Pro Hac Vice*
        Douglas P. Desjardins, Esq.
        Pa. Bar No. 71975
        Joseph L. Anderson, Esq.
        *Pro hac vice*
        1717 N St., NW
        Suite 300
        Washington, DC 20036
        (202) 638-5300
        dpd@pangialaw.com
        adure@pangialaw.com

        Attorneys for Plaintiff J.D. and R.D.

## CERTIFICATE OF SERVICE

I certify that on this the 16th day of September, 2021 that a true and correct copy of the foregoing PLAINTIFFS J.D. AND R.D Omnibus Response to Defendants Delta Air Lines, Inc., HMSHost Corporation, and Host International, Inc. "Undisputed Material Facts" were served upon the counsel of record via e-mail.

| | |
|---|---|
| Todd A. Gray, Esq.<br>Sunshine Fellows, Esq.<br>Donald Smith, Esq.<br>Chloe C. Zidian, Esq.<br>LEWIS, BRISBOIS, BISGAARD &<br>SMITH, LLP<br>One PPG Place, 28th Floor<br>Pittsburgh, PA 15222<br>P: (216) 244-9463<br>F: (412) 567-5494<br>Todd.gray@lewisbrisbois.com<br>Sunshine.R.Fellows@lewisbrisbois.com<br>Donald.Smith@lewisbrisbois.com<br>Chloe.Zidian@lewisbrisbois.com<br>*Counsel for Defendant Benjamin Price* | Karen M. Maschke, Esq.<br>Kathryn A. Grace, Esq.<br>Jonathan Dryer, Esq.<br>WILSON ELSER MOSKOWITZ EDELMAN<br>& DICKER, LLP<br>Two Commerce Square<br>2001 Market Street, Suite 3100<br>Philadelphia, PA 19103<br>P: (215) 606-3927<br>F: (215) 627-2665<br>Karen.maschke@wilsonelser.com<br>Kathryn.grace@wilsonelser.com<br>Jonathan.dryer@wilsonelser.com<br>*Counsel for Defendant Delta Air Lines, Inc.* |
| Thomas DiStefano, Esq.<br>Maureen E. Daley, Esq.<br>RAWLE & HENDERSON, LLP<br>The Henry W. Oliver Building<br>535 Smithfield Street<br>Suite 1000<br>Pittsburgh, PA 15222<br>tdistefano@rawle.com<br>MDaley@rawle.com<br>*Counsel for Defendant Host<br>International, Inc.,<br>HMSHost Corporation* | |

*/s/ Amanda C. Dure*