IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| J.D. and R.D.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>BENJAMIN PRICE, *et al*,<br><br>    *Defendants*. | Civil Action No. 2:20-cv-749<br><br>Hon. William S. Stickman IV |

**OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

  Plaintiffs, J.D. and R.D. ("J.D."), filed a Second Amended Complaint ("Complaint") on June 15, 2020.[1] (ECF No. 22). J.D.'s Complaint alleges a violation of Pennsylvania's Dram Shop Act, 47 P.S. § 4-493. Her claims include negligence per se against Host International, Inc. ("Host") and HMSHost Corporation ("HMSHost") at Counts VII and VIII, as well as claims of negligence and negligent infliction of emotional distress against Delta Air Lines, Inc. ("Delta") at Counts IV and V. The Complaint also alleges loss of consortium against Host, HMSHost and Delta at Count IX. (ECF No. 22, pp. 9-20). Delta, Host and HMSHost filed motions for summary judgment. (ECF No. 57); (ECF No. 70). For the following reasons, the motions will be denied.

**I.  BACKGROUND**

  On May 20, 2018, J.D., a law enforcement officer, arrived at Pittsburgh International Airport to board Delta Air Lines Flight 1860 ("Flight") from Pittsburgh, Pennsylvania to

---

[1] J.D.'s initials are being used because she is a victim of a sexual assault. R.D. is the husband of J.D. (ECF No. 22, p. 1).

1

Hartsfield-Jackson Atlanta International Airport.[2] Defendant Price was also a passenger on the Flight and was seated in seat 13A next to J.D., who was in seat 13B. (ECF No. 79, p. 1); (ECF No. 84, p. 5); (ECF No. 86, p. 7). Prior to boarding the Flight, Price visited the TGI Fridays located in the Pittsburgh International Airport, which was owned and operated by Host and HMSHost. (ECF No. 79, p. 2); (ECF No. 84, p. 1); (ECF No. 86, p. 1). A service ticket was opened for Price at 1:11 p.m. and over the course of approximately two hours, he ordered two 20-ounce Stella Artois beers and three two-ounce shots of 80 proof Crown Royal whiskey. (ECF No. 79, p. 21); (ECF No. 84, p. 1); (ECF No. 86, p. 1). Price stated during his deposition that upon leaving TGI Fridays the bartender who was waiting on him gave him an additional smaller Styrofoam to-go cup that was filled up with Crown Royal whiskey. (ECF No. 79, p. 22); (ECF No. 84, p. 2); (ECF No. 86, p. 3). Price drank some of the whiskey on the way to board his flight and then finished the remainder of it while he was in his seat on the plane. *Id.*

Price was the last person to board the Flight. (ECF No. 79, p. 22); (ECF No. 84, p. 3); (ECF No. 86, p. 4). J.D. noticed that when Price was boarding the aircraft he was "unstable as soon as he got onto the plane" and was staggering and grabbing a hold of other passengers' seats to prevent himself from falling over. (ECF No. 79, p. 24); (ECF No. 84, p. 5); (ECF No. 86, p. 7). J.D. noticed that Price had a strong odor of alcohol about him, his eyes were red and glassy, and he was having issues trying to get his seatbelt buckled. (ECF No. 79, p. 24); (ECF No. 84, p. 6); (ECF No. 86, p. 7).

---

[2] J.D. was traveling on official government duty in her capacity as an armed law enforcement officer. (ECF No. 67, p. 9). Her function as a law enforcement officer aboard the aircraft was to protect the cockpit, and she was not permitted to interfere with passengers unless requested to do so by the crew. (ECF No. 79, p. 24); (ECF No. 84, p. 7); (ECF No. 86, p. 9).

The Flight left the gate at 3:39 p.m. (ECF No. 79, p. 22); (ECF No. 84, p. 3); (ECF No. 86, p. 4). Price then "passed out" after getting situated. Price was not served any alcoholic beverages during the Flight. Approximately ten minutes prior to descent, J.D. was engaged in conversation with the passenger in seat 13C.[3] Price woke up and cupped J.D.'s vagina. He then placed his hand on the inside of J.D.'s thigh and rubbed down her thigh. (ECF No. 79, p. 25); (ECF No. 84, p. 8); (ECF No. 86, pp. 9-10).[4] J.D. took hold of Price's wrist for the entirety of the remainder of the flight, which landed in Atlanta at 5:22 p.m. She requested assistance in arresting Price from Delta employees and the Atlanta Police Department, and she held him on the plane until the other passengers disembarked. (ECF No. 79, p. 25); (ECF No. 84, pp. 8-10); (ECF No. 86, pp. 10-11). Price exited the Flight and was placed under arrest for public drunkenness.[5] (ECF No. 79, p. 26); (ECF No. 84, pp. 10-11); (ECF No. 86, p. 13)

## II.   STANDARD OF REVIEW

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And there is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must view the evidence presented in the light most favorable to the

---

[3] The passenger assigned to seat 13C was Vincent Pilolli. He was not deposed, nor did he provide any statements.

[4] Price pleaded guilty to assaulting J.D. on board the Flight pursuant to 18 § U.S.C. 113(a)(5) and 49 § U.S.C. 46506(1) at Case Number 1:19-CR-532-CCB in the United States District Court of the Northern District of Georgia. (ECF No. 81-17, p. 2).

[5] Price pleaded nolo contendere to public drunkenness at Case Number 2018CR04838 in the State Court of Clayton County, State of Georgia. (ECF No. 81-16, p. 2)

nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

### III. ANALYSIS

The Court's probing analysis of the record and consideration of the parties' pleadings leads it to conclude that genuine issues of material fact exist that render summary judgment improper as to the claims against Host, HMSHost, and Delta.

#### A. Host and HMSHost's Motion for Summary Judgment

J.D. alleges a violation of Pennsylvania's Dram Shop Act, 47 P.S. § 4-493, and thus claims negligence per se against Host and HMSHost. (ECF No. 22, p. 15-18). Pennsylvania's Dram Shop Act states in pertinent part:

> **It shall be unlawful--**
> **(1) Furnishing Liquor or Malt or Brewed Beverages to Certain Persons.** For any licensee or the board, or any employe[e], servant or agent of such licensee or of the board, or any other person, to sell, furnish or give any liquor or malt or brewed beverages, or to permit any liquor or malt or brewed beverages to be sold, furnished or given, to any person *visibly intoxicated*…

47 Pa. Stat. Ann. § 4-493 (West) (emphasis added). Violation of Pennsylvania's Dram Shop Act is negligence per se, and a defendant will be held liable if the violation is the proximate cause of the injuries. *Id.* It is not sufficient for a plaintiff to establish merely that alcoholic beverages were served to a patron or that a patron was intoxicated at the time he or she was injured or caused injury to another. *Holpp v. Fez, Inc.*, 656 A.2d 147, 149 (1995). For civil liability to attach, evidence must be produced indicating that the patron was served alcohol at a time when he or she was *visibly intoxicated*. *Id.*; 47 P.S. § 4–493(1) (emphasis added).

4

Under Pennsylvania law, "a plaintiff can prove dram shop liability in the absence of direct eyewitness evidence that an individual was served alcohol at a time when he or she was visibly intoxicated." *Fandozzi v. Kelly Hotel, Inc.,* 711 A.2d 524, 527 (Pa. Super. 1998). A party can overcome summary judgment by relying on circumstantial evidence, or "evidence based on inference and not on personal knowledge or observation" from which "a factfinder could reasonably conclude that the tortfeasor was served while visibly intoxicated." *Poon v. Dom*, 2017 WL 3267849, at *1 (W.D. Pa. July 31, 2017).

In analyzing a dram shop liability dispute, Pennsylvania courts have considered the following factors when relying on circumstantial evidence to overcome summary judgment: (1) quantitative proof of heavy consumption of alcoholic beverages at the licensee's establishment; (2) visible signs of intoxication shortly after leaving the establishment; (3) visible signs of intoxication at the time of the accident or incident causing the plaintiff's injuries; and (4) proof that the last drink consumed prior to the accident/incident causing the plaintiff's injuries was provided at the licensee's establishment. *See Couts v. Ghion*, 421 A.2d 1184 (Pa. Super. 1980); *Speicher v. Reda*, 434 A.2d 183 (Pa. Super. 1981); *Fanzozzi*; *Poon*, WL 3267849. J.D. claims blood alcohol level is an additional factor that should be considered, but Price's blood alcohol level was never taken. (ECF No. 79, p. 19). J.D. attempts to use medical testimony of what the average person's reaction might have been assuming Price's "probable" blood alcohol concentration. (ECF No. 80, p. 11). There is no indication in the record at this point that Price's reaction to alcohol ingestion would correlate with the average person's and therefore this factor will not be considered.[6] *Johnson v. Harris*, 615 A.2d 771, 776 (Pa. Super. 1992).

---

[6] J.D. presented expert testimony regarding what Price's blood alcohol level may have been. Based on the expert testimony, J.D. attempts to determine the visible symptoms Price would have

5

The state of the record before the Court is such that conflicting evidence exists as to whether Price was visibly intoxicated while being served at TGI Fridays. Over the course of approximately two hours, Price ordered two 20-ounce Stella Artois beers and three two-ounce shots of 80 proof Crown Royal liquor.[7] (ECF No. 81-12, p. 13) (ECF No. 70-2, p. 2). Price admitted to being drunk in his deposition. Price testified "Yes, I was drunk." and after being asked "Was this the drunkest, the most intoxicated you had ever been in your life?", Price answered "Probably, yes." (ECF No. 81-4, p. 7). Price then boarded the Flight and was not served any alcohol. (ECF No. 60-5, p. 4).

The Delta gate agent for the Flight at the Pittsburgh International Airport testified in her deposition that she did not recall interacting with Price or observing him as he boarded the Flight. She stated that if there would have been something alarming about Price, she would have remembered it, and documented it. (ECF No. 81-7, p. 15). J.D. testified Price was unstable as soon as he got onto the plane. (ECF No. 81-2, p. 4). J.D. also testified she could smell the odor of alcohol on Price when he sat next to her and that Price's eyes were red and glassy. *Id.*

The Flight landed in Atlanta at 5:22 p.m. (ECF No. 79, p. 22). At this point, J.D. requested assistance from Delta regarding the assault committed by Price. The lead flight attendant stopped Price before he could exit the Flight. (ECF No. 60-4, p. 3). The flight attendant spoke with Price about the incident with J.D. and later testified that he "absolutely" did not notice anything that would have indicated Price was impaired. *Id.*

In contrast, after Price exited the Flight, Detective Nicholas Deaton ("Detective Deaton"), a Clayton County Georgia Police Officer and FBI Task Force Officer at the time, observed,

---

exhibited. (ECF No. 80, pp. 11-12). This is a factual determination that needs to be left for the fact finder and therefore will not be addressed by the Court.

[7] The bartender who served Price was not deposed, nor did he/she provide any statements.

interacted with, and arrested Price after observing his intoxication. Detective Deaton stated that Price's, "eyes were red and glassy; he had a strong odor of alcoholic beverages about his person; he was unsteady on his feet and stumbled as he walked; his speech was slurred." (ECF No. 79-19, p. 2). Additionally, Spencer Hutchinson, a Delta Red Jacket[8], testified that Price exhibited numerous signs of intoxication upon landing at the Atlanta airport, including staggering up the jetway, smelling strongly of alcohol, slurring speech, and spending thirty minutes in the restroom. (ECF No. 79-9, pp. 3, 7). Lastly, Jan Burton, a Delta gate agent in Atlanta, testified that upon landing in Atlanta, Price was red and slurring, and by his appearance would not be allowed to board her aircraft if he came to her gate. (ECF No. 79-10, p. 3-4).

J.D. has offered no direct evidence that Price was served alcohol at TGI Fridays while he was visibly intoxicated. However, the Court finds that J.D. has produced sufficient circumstantial evidence, including Price's own testimony, that creates a genuine issue of material fact as to whether Price was visibly intoxicated while being served alcoholic beverages at TGI Fridays. Price's receipt from TGI Fridays provided quantitative proof of heavy consumption of alcoholic beverages. Additionally, J.D. testified that Price appeared intoxicated as he boarded the Flight, which occurred shortly after he left TGI Fridays. Price's last drink consumed prior to the incident with J.D. was provided by TGI Fridays. Furthermore, multiple people testified as to Price's intoxication after the incident occurred. Thus, a jury must determine whether Price was visibly intoxicated while being served alcoholic beverages at TGI Fridays. The Court will deny Host and HMSHost's motion for summary judgment.

---

[8] A Red Jacket is Delta's security personnel. (ECF No. 67, p. 12).

### B. Delta's Motion for Summary Judgment

J.D. alleges negligence and negligent infliction of emotional distress against Delta. In Pennsylvania, the elements necessary to plead an action in negligence are: (1) the existence of a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal relationship between the breach and the resulting injury; and (4) actual loss or damage suffered by the plaintiffs. *Orner v. Mallick*, 527 A.2d 521, 523 (Pa. 1987). It is well established in Pennsylvania that common carriers, such as Delta, owe the "highest degree of care" to their passengers. *Connolly v. Philadelphia Transp. Co.*, 216 A.2d 60, 62 (Pa. 1966). "Although the carrier is not an insurer of its passengers' safety, the carrier must exercise the highest standard of care that is reasonably practicable." *LeGrand v. Lincoln Lines, Inc.*, 384 A.2d 955, 956 (Pa. Super. 1978). Pursuant to 14 C.F.R. § 121.575, "[n]o certificate holder may allow any person to board any of its aircraft if that person appears to be intoxicated." Delta's own employees acknowledged that their company policies provide that a person who appears to be intoxicated may be a potential safety risk to himself/herself or others during the flight, and therefore should not be allowed to board the plane. (ECF No. 81-5); (ECF No. 81-7).

Delta argues there is no evidence or testimony, other than J.D.'s own allegations, that Price was visibly intoxicated when he boarded the Flight. Furthermore, Delta argues there is no evidence that Price indicated a disposition to engage in violent or harmful behavior at any time before the incident with J.D. (ECF No. 68, p. 4). Delta asserts that absent any evidence that Delta knew or should have known that Price was inclined to commit an intentional assault on J.D., it had no duty or reason to take precautions. *Id.* at 5.

Conversely, J.D. argues that "Delta had every reason to anticipate that an intoxicated passenger could commit an assault on a fellow passenger." (ECF No. 80, p. 15). J.D. cites to

8

*Thompson v. Hawaiian Airlines, Inc.*, WL 11515431, at *5 (C.D. Cal. July 19, 2010) which is not binding upon the Court, but has a similar fact pattern. In *Thompson*, the district court noted the duty owed to protecting passengers is especially high for airlines, given that large numbers of strangers are forced into very close contact with one another, passengers have no control over who is admitted on the plane, passengers cannot choose when to exit the plane, and passengers have limited mobility while on board. The Court finds that *Thompson* properly analyzes the heightened duty airlines owe to their passengers. *Thompson* illustrates the vulnerability that airline passengers experience once they board a flight. Passengers rely almost entirely on the airline to safely transport them to their destination. Inherent in that reliance is an expectation that other passengers will be subject to the airline's policies and procedures, which are established to ensure the passengers' safety.

Delta, as a common carrier, owed J.D. the highest degree of care that was reasonably practicable. *Connolly*, 216 A.2d at 62; *LeGrand*, 384 A.2d at 956. Part of the care Delta owed to J.D. was to protect her safety while she was on the Flight from the reasonably foreseeable assaults of other passengers. Whether Delta breached its duty owed to J.D. is less clear when the facts are taken in the light most favorable to J.D. as the non-moving party. As previously noted above, there are genuine disputes of material fact as to whether Price appeared intoxicated when boarding the Flight. Furthermore, another question exists as to whether Price's assault on J.D. was reasonably foreseeable. Therefore, the Court will deny Delta's motion for summary judgment.[9]

---

[9] R.D.'s loss of consortium claim need not be addressed by the Court at this time because it is a derivative action of J.D.'s claim. *Barchfeld.* Additionally, negligent infliction of emotional distress ("NIED") need not be addressed by the Court at this time because negligence must first be established to claim NIED. R.D.'s loss of consortium claim need not be addressed by the Court at this time because it is a derivative action of J.D.'s claim. *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d at 45 (Pa. Super. 2000).

## IV.     CONCLUSION

For the reasons set forth above, the Court will deny Host's, HMSHost's, and Delta's motions for summary judgment. An Order of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

11-3-2021
Dated